## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | CASE NO. 8:05CV296 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| NILS HUXTABLE, | ) ) | |
| Defendant. | ) ) | |

Union Pacific Railroad Company ("UPRC") commenced this action against Nils Huxtable, an individual, alleging that Huxtable, through his publication and distribution of calendars featuring Union Pacific trains, has infringed upon trademarks owned by UPRC. This matter is before the Court on UPRC's Motion for Partial Summary Judgment (Filing No. 34) which addresses only its claims that Huxtable has violated federal trademark law. Huxtable opposes the motion, arguing that genuine issues of material fact prevent the entry of summary judgment on these claims.

In its Complaint, UPRC alleges that Huxtable, a resident of Vancouver, British Columbia, has in the past and continues to infringe upon several of its corporate trademarks in violation of state and federal laws, including 15 U.S.C. §§ 1114, 1116-18. UPRC also asserts claims based on trademark dilution and unfair competition under the Lanham Act, 15 U.S.C. §1125(a) and (c), the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301 to 87-306 (Reissue 1999); and common law. UPRC seeks declaratory and injunctive relief, damages, and attorney's fees from Huxtable.

Huxtable contends that UPRC has abandoned its trademarks, in whole or in part, by failing to protect them for several years and that it has acquiesced in Huxtable's use of the trademarks by permitting the trademarks' uncontrolled use by numerous third-parties,

including himself, over several years.   Answer and Counterclaim at ¶ 103.  Huxtable also alleges that his calendars' use of the terms "Union Pacific" and "Union Pacific Railroad" constitutes fair use under the law, and, therefore, he has not infringed upon the trademarks nor violated any law.  Huxtable asserts several defenses, and he has filed a counterclaim against UPRC seeking declaratory relief pursuant to federal and state trademark laws. Huxtable also seeks money damages based on UPRC's alleged tortious interference with his business relationships and its alleged violation of the Nebraska Uniform Deceptive Trade Practices Act.   UPRC denies all counterclaims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Finance, Inc.,* 445 F.3d 1106, 1109 (8th Cir. 2006*) (quoting Bockelman v. MCI Worldcom, Inc.,* 403 F.3d 528, 531 (8th Cir. 2005)).   The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).   The proponent need not, however, negate the opponent's claims or defenses.   *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"   *Matsushita Elec. Indus.*

2

*Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249-50 (citations omitted).

Summary judgment may be appropriate in trademark cases, provided that the facts establishing liability are clear and undisputed. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*,  814 F.2d 812, 815 (1st Cir. 1987).

## FACTUAL BACKGROUND

Huxtable objects to UPRC's Statement of Undisputed Facts on the basis that it does not, in its entirety, comply with NECivR 56.1.  I agree that UPRC's Statement  lacks pinpoint references to the evidentiary record in some cases, and I remind counsel to review and comply with the Court's local rules which are available on the Court's website. Because UPRC partially complied with the rule, Huxtable's argument for denial on this issue will not prevail.

UPRC claims to be the owner of the following registered trademarks:

| Exhibit to Complaint | Trademark Registration No. | Description |
|---|---|---|
| Ex. A | Reg. No.  533,221 | Union Pacific Railroad |
| Ex. B | Reg. No. 2,666,974 | Union Pacific and design |
| Ex. C | Reg. No.  1,230,375 | Union Pacific and design |

UPRC states that the registration for each of the marks is in full force and effect, and that UPRC and its predecessor companies have used the marks continuously since the time the marks were registered.  Huxtable disputes that the UPRC's trademarks are "in full force and effect."   He also questions the accuracy of the corporate ownership shown on the registration documents, correctly pointing out that the place of incorporation of the entity described on Exhibits A and C is Utah, which is not the same as the place of incorporation alleged in the UPRC's Complaint, which is Delaware.  However, it appears that there is no dispute that the trademarks that are the subject of this action were in existence before Huxtable's first use of the marks on his calendars in approximately 1994.

Huxtable describes himself as a professional photographer and author.  He published several photographic albums in the late 1980s.  (Filing No. 13; Counterclaim at ¶ 6).  Huxtable states that he took his first photograph of a Union Pacific train when he was sixteen.  Since 1994, Huxtable has compiled several calendars that display railroads in natural settings.   Huxtable has advertised and sold calendars bearing images and descriptions of diesel and steam locomotives, including some calendars that prominently display the words  "Union Pacific" and "Union Pacific Railroad" on the calendars' covers and that display the trademarks that are the subject of this case in photographic reproductions of trains featured inside the calendars.

Huxtable contends that for many years, the UPRC has had actual knowledge that he was taking photographs of Union Pacific trains, preparing historical and subject-specific calendars that highlighted Union Pacific trains, and selling the calendars for profit. Huxtable has presented copies of checks made payable to "Steamscenes" of Vancouver, British Columbia, dated in 1999 and 2000, that purportedly evidence UPRC's purchase of

4

calendars from Huxtable.  (Filing No. 73, Ex. 8.)    At least one Union Pacific-theme calendar was sent as a gift to UPRC by Huxtable in 1998, and his gift was acknowledged in a letter from the UPRC museum curator, Deirdre Routt.  (*Id. at* Exhibit 8A.)

In December 2002, UPRC announced a formal licensing program concerning the use of UPRC trademarks.  (Filing No. 14, "UPRC Answer to Counterclaim" at ¶ 12).  The program put on notice those who had been using UPRC's trademarks with impunity that, as of 2004, UPRC intended to commenced enforcement actions against any person or entity that used its trademarks without a valid licensing agreement with the company.  As part of its licensing program, on or about August 15, 2003, UPRC sent a letter to a company in the United Kingdom objecting to the use of the term "Union Pacific" in a Steamscenes calendar.  (*Id.* at ¶13).  On or about March 4, 2004, UPRC's director of corporate relations sent a letter to Huxtable in which UPRC stated that Huxtable was not authorized to use Union Pacific marks in connection with any products. (*Id.* at ¶14).[1]  This action was commenced in June 2005.  (Filing No. 1).  Huxtable published calendars bearing the "Union Pacific" name in both 2005 and 2006. (Filing No. A 36).  UPRC admits that its director of corporate relations has sent correspondence requesting certain businesses refrain from carrying the Steamscenes calendar.  (UPRC Answer to Counterclaim at ¶16).

---

[1]  In 2005, UPRC commenced an action in this court against Defendant Michael Tyak and Steamscenes U.K. that concluded in the entry of a Consent Judgment against Defendant Tyak, who Huxtable describes as his former distributor in the United Kingdom and Australia, and a default judgment entered against Steamscenes U.K.  (*Id.* at ¶ 15).

**ANALYSIS**

This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.   UPRC is a Delaware corporation with its principal place of business in Nebraska.   Huxtable is a resident of West Vancouver, British Columbia, Canada.   (Filing No. 13).   Huxtable admits that he has been in Nebraska for business reasons, and that he has sold a small number of calendars in Nebraska under his company name, Steamscenes.   Steamscenes is identified on the calendars as also being located in West Vancouver, British Columbia.   Accordingly, the Court has jurisdiction over the parties.

**Ownership and Character of Trademarks**

Registered trademarks are protected under federal law.   The statute provides, in part:

> 1) Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C.A. § 1114(a) (1998 & Cum. Supp. 2006).

6

A trademark owner's certificate of registration is "prima facie evidence of the validity of the registration and continued use of the registered mark." *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989). UPRC characterizes the trademarks at issue in this case as "incontestable." A registrant may seek to have its mark declared "incontestable" pursuant to 15 U.S.C. § 1065 five years after registering the mark. "[T]he registration of a trademark as incontestable is conclusive evidence of the registrant's exclusive right to use the mark, as well as the registrant's ownership of the trademark, subject to the enumerated defenses." *Dakota Industries, Inc. v. Ever Best Ltd.* 28 F.3d 910, 912 (8th Cir. 1994) (citing 15 U.S.C. § 1115(b)(1)-(8)). If one of the eight statutory defenses is valid, then "registration for incontestable status falls from "conclusive evidence" of the registrant's right to exclusive use and ownership of the trademark to merely prima facie evidence." *Id.* citing *Park 'N Fly v. Dollar Park 'and Fly, Inc.,* 469 U.S. at 189, 199 n. 6 (1985).

Huxtable argues that there are genuine issues of fact regarding UPRC's ownership of the trademarks at issue. Huxtable observes that two of the three exhibits attached to the Complaint as Exhibits B and C are simply copies, not certified copies, of registrations, and that Exhibits A and C reference the ownership of Union Pacific Railroad, a Utah corporation, rather than Union Pacific Railroad Corporation, the Plaintiff in this case which is a Delaware corporation. Although I may have little doubt that UPRC can establish its current ownership of the trademarks involved in this case, Huxtable's objections to the Plaintiff's Statement of Undisputed Facts with regard to the ownership issue are well-taken, and, if the parties are unable to reach a stipulation on this matter, UPRC should be

prepared to present evidence of corporate succession necessary to demonstrate trademark ownership at the appropriate time. [2]

**Violation of Federal Trademark Law**

UPRC argues that there are no genuine issues of material fact with regard to the ultimate issue in this case: whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product. *Hubbard Feeds, Inc. v. Animal Feed Supp., Inc.*, 182 F.3d 598, 602 (8th Cir. 1999). The Court of Appeals for the Eighth Circuit has identified several factors that may be considered in determining the likelihood of confusion. A non-exhaustive list of factors to be considered, sometimes referred to as the *SquirtCo* factors, includes:

1.   The strength of the owner's mark;

2.   The similarity between the owner's mark and the alleged infringer's mark;

3.   The degree to which the products compete with each other;

4.   The alleged infringer's intent to pass off its goods as that of the trademark owner;

5.   Incidents of actual confusion; and

6.   The type of product, its costs and conditions of purchase.

*Everest Capital Ltd. v. Everest Fund Mgmt., LLC.*, 393 F.3d 755, 759-60 (8th Cir. 2005) (citing *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)). No one factor

---

[2] I proceed, assuming that if UPRC was put to its proof on the ownership of the registrations, it could demonstrate its current ownership. However, I make no assumption regarding the amount of time that UPRC has owned the marks, and so I conclude that there is a genuine issue of material fact regarding whether the trademarks' status is, as claimed by UPRC, "incontestable." Because UPRC has failed to establish the incontestable status of the subject trademarks, I find no conclusive evidence as to ownership, but only a prima facie evidence.

controls, and the inquiry is case-specific.  *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049 (8th Cir. 2005).

In the Eighth Circuit, where likelihood of confusion is a finding of fact,[3] summary judgment on the issue is not appropriate unless the Court determines that there are no genuine issues of material fact that remain to be decided regarding the *SquirtCo* factors.  I will consider each factor in turn.

### 1.   Strength of mark.

UPRC contends that with regard to the first factor, its marks are very strong.  UPRC began using the mark "Union Pacific Railroad" in 1897 (Ex. A); it has used the "Union Pacific" mark and design (Ex. B) on some products since 1930, and the transportation service mark since 1942.  (Ex. C.)  In response to UPRC's Statement of Undisputed Facts, Huxtable argues that UPRC has failed to demonstrate the ownership of the marks as required under Rule 56, and that the Court has insufficient information about the marks' ownership to make a finding of fact on the issue.  I agree.

### 2.   Similarities

With regard to the second factor,  UPRC argues that Huxtable's use of the words "Union Pacific" on the cover of his calendars and catalogues and within his calendars is identical to the word portion of the trademarks at Ex. B and C, and that these words constitute a significant part of the trademarked words of Ex. A ("Union Pacific Railroad").  Huxtable argues that the font and typeface that he uses for the "Union Pacific" wording on

---

[3]Compare *SquirtCo.,* 628 F.2d at 1091 (stating, "[l]ikelihood of confusion is a finding of fact") with *Plus Prods. v. Plus Discount Foods, Inc.*, 722 F2d 999,1004-05 (2nd Cir. 1983)(holding that likelihood of confusion is an issue of law.)

his calendars is distinct from the typefaces he has seen UPRC use in its trademarks. Given the Eighth Circuit Court's treatment of the trade-dress issues in *Kemp,* I find that there are genuine issues of material fact regarding whether the differences in the font style and size and colors are insufficient to ward off consumer confusion in this case. *Kemp,* 398 F.3d at 1055.

### 3. Competition

With regard to the third factor, UPRC states that both it and Huxtable sell and/or distribute calendars to the public, and therefore, the calendars are in direct competition. Although UPRC listed as an undisputed fact the allegation that it has distributed calendars bearing the words "Union Pacific" since the 1920s, UPRC provided the Court with no evidentiary citation for the assertion. Huxtable filed UPRC's Answers to Interrogatories in opposition to the motion. In its Answers to Interrogatories, UPRC stated that it has authorized the publication of an annual calendar since approximately 1913, and that the calendar is published and printed by outside companies. (Filing No. 73, Ex. 5 at Answer 12). UPRC has recently licensed three companies to publish calendars that bear its trademarks and logos. (*Id.* at Answer to 15). It is undisputed that Huxtable has not been given a license to use the subject trademarks, including the words "Union Pacific," on his calendars. Whether UPRC was actually publishing the calendars or simply authorizing others to do so on its behalf, the calendars prepared by Huxtable were in competition with UPRC's calendars – even if it is shown that UPRC's calendars were distributed only for marketing or promotional purposes. The Eighth Circuit Court has acknowledged that confusion may exist even in the absence of direct competition. See *Anheuser-Busch, Inc.*

10

*v. Balducci Publ'ns*, 28 F.3d 769, 774 (8th Cir. 1994). I find that there are genuine issues of fact regarding the competition factor.

### 4.      Intent

On the cover of each calendar that has been provided to the Court, the phrase "A Steamscenes Publication" appears in a corner, which may be construed by the fact-finder as proof that Huxtable did not intend to mislead consumers.  (Filing No. 36A; 73, Ex. 1). UPRC has no evidence to demonstrate that Huxtable meant to mislead consumers into believing that the UPRC was publishing his Steamscenes calendars, and yet Huxtable does not deny that  inclusion of "Union Pacific" on the cover is intended to describe the content of the calendar.  The issue of Huxtable's intent is best left to the trier of fact. This weighs in Huxtable's favor, but "it is not dispositive, for intent to pass off one's goods as another's is not essential to an infringement claim," but only one factor to be considered by the trier of fact.  *See Mutual of Omaha Ins. Co. v. Novak,*  836 F.2d 397, 400 (8th Cir. 1987).

### 5.      Actual confusion

UPRC concedes that it has received no reports of actual confusion. This undisputed factor weighs against a finding of confusion.

### 6.      The type of product, its costs, and conditions of purchase.

The products at issue in this case are calendars.  UPRC is not alleging that Huxtable's infringement affects its railway business and products, except by violating its right to profit from its own merchandising.  Because UPRC distributes calendars, if not for

11

profit at least for marketing and promotion, this factor also weighs in favor of finding a likelihood of consumer confusion.

**Summary**

I am mindful of the Eighth Circuit's approval of the following observation:

> This pivotal trademark issue [the existence of consumer confusion] is well suited to resolution by a jury . . . which represents a cross-section of consumers [and] is well suited to evaluating whether an 'ordinary consumer' would likely be confused.

*Everest Capital Ltd,* 393 F.3d 755, 760 (quoting *Anheuser-Busch, Inc. v. L. & L. Wings, Inc.,* 962 F.2d 316, 318 (4th Cir. 1992).

## CONCLUSION

Because UPRC's ownership of the trademarks in question is not demonstrated conclusively by the evidence before the Court at this time, and because there are genuine issues of material fact remaining to be decided with regard to most of the factors used to evaluate the issue of consumer confusion, UPRC's motion for summary judgment will be denied.

Even if I were to accept UPRC's assertions regarding its ownership of the trademarks, and I were to find conclusive evidence of consumer confusion caused by Huxtable's use of the trademarks, summary judgment could not be granted at this time in light of the defenses asserted by Huxtable.   UPRC has not yet addressed the statutory defenses to this action.  See 15 U.S.C. § 1115.  These defenses, including but not limited to abandonment, acquiescence, laches, estoppel, and whether Huxtable's use is a nominative fair use, a non-trademark use, or protected by a First Amendment right to

freedom of expression, must be resolved before the merit of UPRC's claims is ultimately resolved.

For these reasons,

IT IS ORDERED:

1.     Plaintiff's Motion for Partial Summary Judgment (Filing No. 34) is denied; and

2.     Defendant's unopposed motion to extend the time within which to file the response to the Plaintiff's motion (Filing No. 70) is granted, and the brief and evidence have been considered.

DATED this 7th day of July, 2006.

BY THE COURT

s/Laurie Smith Camp
United States District Judge