IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 8:05CV296 |
| vs. | ) | |
| | ) | ORDER |
| **NILS HUXTABLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on defendant's "EMERGENCY MOTION TO COMPEL DEPOSITION OF SHANE M. NIEBERGALL ON JULY 26, 2006" (Filing 130). Plaintiff and Mr. Niebergall timely filed a response requesting that the subpoena be quashed and/or for a protective order (Filings 135 & 136).

Very briefly summarized, defendant Huxtable, doing business as "Steamscenes," publishes calendars featuring photographs of Union Pacific trains. Huxtable resides in Canada. For various reasons, Union Pacific contends Huxtable is liable for trademark infringement and Huxtable contends the trademarks are invalid or unenforceable. Huxtable has also asserted raised a state-law counterclaim for tortious interference with business relationships, tortious interference with business expectancy and disparagement, based, in part, on these allegations:

> [O]n or about April 14, 2005, Plaintiff lodged Civil Action No. 8:05-CV-00168-LSC-FG3 in this District, against Michael [Tyack], Defendant's aforementioned customer/distributor in the U.K., and an alleged corporate entity, "Steamscenes UK," notwithstanding Plaintiff's full knowledge: (a) that no basis existed for this Court's exercise of personal jurisdiction over Mr. [Tyack]; and, (b) that "Steamscenes UK" was a fictitious business name employed by Mr. [Tyack], with no independent juridical existence. Although Mr. [Tyack], unrepresented by counsel, and lacking familiarity with U.S. legal procedures, wrote a letter to the Court, reiterating these facts, on May 15, 2005, and copied Plaintiff's counsel on that correspondence, ultimately,

> Plaintiff coerced Mr. [Tyack] into signing a Consent Judgment, which Plaintiff filed with the Court, admitting liability for trademark infringement, and undertaking not to sell Defendant's subject calendars in the future. Moreover, following the entry of this Consent Judgment, Plaintiff requested a default judgment against the nonexistent "Steamscenes UK" entity, based on Plaintiff's misrepresentation to the Court that "Steamscenes UK" was a corporation, rather than an assumed name of Mr. [Tyack]. The net effect of these actions was to stop the flow of Defendant's subject calendars from Canada, where they are prepared, to the U.K. and Australia – all regions where, upon information and belief, Plaintiff held no trademark rights.

(Filing 13 at p.21).

Mr. Niebergall represented Union Pacific in *Union Pacific v. Tyack*, Case No. 8:05-CV-00168. Mr. Niebergall assisted in filing the present case on behalf of Union Pacific; however, he and his law firm withdrew their appearances in this case approximately three months ago. Defendant Huxtable now wishes to depose Niebergall about certain actions taken in the *Tyack* case, which was closed on or about November 1, 2005.

## DISCUSSION

The scope of discovery in federal civil actions is set out in Rule 26(b)(1) of the Federal Rules of Civil Procedure, which allows discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party," and, for good cause shown, "discovery of any matter relevant to the subject matter involved in the action." Pursuant to Rule 26(b)(2), the court may limit discovery if the court determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy,

the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. P. 26(b)(2).

The Federal Rules of Civil Procedure permit discovery via the deposition of "any person" without leave of court. Fed. R. Civ. P. 30(a)(1). The Rules do not themselves exempt attorneys from being a source of discoverable facts. In *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 247 (D. Kan. 1995), the court observed:

> Fed. R. Civ. P. 26(b)(3)[1] clearly contemplates discovery from attorneys as well as from the parties themselves or their agents. When work product is sought under Rule 26(b)(3), such discovery is limited to circumstances where the party seeking discovery can establish a substantial need and an inability to obtain the substantial equivalent by other means. The burden of establishing the criteria set forth in Rule 26(b)(3) is upon the party seeking discovery. Neither the criteria for determining the appropriateness of discovery or the burden of establishing the existence of the criteria are altered because the documents were prepared by or in the custody of an attorney. Not only are attorneys not exempt from this rule, discovery from them is clearly contemplated. It is inconceivable that had the drafters of the Federal Rules of Civil Procedure, the Supreme Court or Congress intended to exempt attorneys from the provisions of Rule 30 or to otherwise limit discovery from attorneys, they would not have included a provision in Rule 30 similar to that contained in Rule 26(b)(3). Had the Court or Congress intended to engraft a preliminary showing when deposition discovery was sought from attorneys, such an exception would likely have been found in Rule 30 or otherwise within the Rules of Civil Procedure. *Attorneys with discoverable facts, not protected by attorney-client privilege or work product, are not exempt from being a source for discovery by virtue of their license to practice law or their employment by a party to represent them in litigation.*

---

[1] Rule 26(b)(3) provides, in part:
   [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means....

(Emphasis added).

Within the Eighth Circuit, the leading case on deposing the trial counsel of an adverse party has been *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). In *Shelton*, the Court of Appeals

> cautioned against the potential problems caused by deposing opposing counsel and developed a three-prong test that a party must satisfy in order to depose the opposition's attorney. *See* [*Shelton*, 805 F.2d] at 1327. A party must show that "(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Id.* This difficult burden imposed by *Shelton* was intended to guard against the "harassing practice of deposing opposing counsel ... that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002). The court subsequently explained in *Pamida v. E.S. Originals* that its decision in *Shelton* was intended "to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.... Because this abuse of the discovery process had become an ever increasing practice, this Court erected the *Shelton* test as a barrier to protect trial attorneys from these depositions." 281 F.3d at 730.

> But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial. In such circumstances, the protection *Shelton* provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case.

*Id.* Other courts have acknowledged the Eighth Circuit's limitation of the *Shelton* rule. *See, e.g., aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d at 775 ("[t]he Eighth Circuit has limited *Shelton* to the depositions of trial counsel regarding their knowledge about the particular case in which they served as trial counsel."); *United States v. Philip Morris, Inc.*, 209 F.R.D. 13, 17 (D.D.C. 2002) ("*Pamida* makes clear that the three *Shelton* criteria apply to limit deposition questions of attorneys in only two instances: (1) when trial and/or litigation counsel are being deposed, and (2) when such questioning would expose litigation strategy in the pending case.")

It seems highly likely that Mr. Niebergall is in the possession of information that is relevant and critical to Huxtable's counterclaim. Huxtable has satisfactorily explained in his brief that Mr. Niebergall is the only possible source of the information; all other sources are in the United Kingdom, outside the court's jurisdiction. Niebergall no longer represents Union Pacific in this or related litigation. The matters of inquiry involve a case that has been closed for nine months.

Considering all the circumstances, I find that all of the original *Shelton* factors have been satisfied and, in the alternative, that the deposition is permissible under *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002). Mr. Niebergall will be ordered to appear for deposition, as scheduled, to testify as to "any matter, not privileged" or otherwise protected relating to *Union Pacific v. Tyack*, Case No. 8:05-CV-00168.[2]

---

[2]"The work product privilege extends beyond the termination of litigation," but may be waived. *Pamida v. E.S. Originals*, 281 F.3d at 731. However, a party seeking to invoke work product protection or the attorney-client privilege bears the initial burden of proving a factual basis establishing the applicability of the privilege. *See, e.g., In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997); St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 197 F.R.D. 620, 627-28 (N.D. Iowa 2000).

**IT IS ORDERED:**

1. Defendant's Motion to Compel Deposition [130] is granted, and Shane M. Niebergall shall appear for deposition as scheduled.

2. Plaintiff's Motion to Quash Subpoena or for Protective Order [135] is denied.

Pursuant to NECivR 72.2, a party may appeal this order by filing a "Statement of Appeal of Magistrate Judge's Order" within ten (10) days after being served with the order. The party shall specifically state the order or portion thereof appealed from and the basis of the appeal. The appealing party shall file contemporaneously with the statement of appeal a brief setting forth the party's arguments that the magistrate judge's order is clearly erroneous or contrary to law. The filing of a statement of appeal does not automatically stay the magistrate judge's order pending appeal. See NECivR 72.2(d).

**DATED July 25, 2006.**

          **BY THE COURT:**

          **s/ F.A. Gossett**
          **United States Magistrate Judge**